FILED

OCT 2 6 2004

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ROSSI M. POTTS
14124 Bishop Claggett Court
Upper Marlboro, MD. 20772
(301) 574-2541

      Plaintiff,

v.

HOWARD UNIVERSITY HOSPITAL
2041 Georgia Avenue, N.W.
Washington, DC 20060

      Defendant,

CASE NUMBER  1:04CV01856

JUDGE: Ricardo M. Urbina

DECK TYPE: Employment Discrimination

DATE STAMP: 10/26/2004

## COMPLAINT FOR DAMAGES FOR INTENTIONAL DISCRIMINATION(SEX), RETALIATION, FRAUD, BREACH OF CONTRACT AFSCME LOCAL 2094, AND FOR OTHER RELIEF

### PARTIES

1. The plaintiff is an individual residing at 14124 Bishop Claggett Court, Upper Marlboro, Maryland 20772. He recently was, and at all times pertinent hereto was, an employee of the defendant, Howard University Hospital.

2. The defendant is a Medical Hospital located at 2041 Georgia Avenue, NW, Washington, DC. 20060.

### JURISDICTION

3. This court has jurisdiction pursuant to, **Title VII of the Civil Rights Act of 1964 (Title VII), The Civil Rights Act of 1991, and The Equal Pay Act of 1963 (EPA)**

1

## COUNT 1
## INTENTIONAL DICRIMINATION (SEX)

4. The plaintiff recently was, and at all times pertinent hereto has been, employed by the defendant since **1994** to **2002**, as an echocardiography technologist in the department of medicine.

5. **On July 9, 1997**, the plaintiff was offered a position at the **Laurel Regional Hospital**, "**Exhibit A**" one page attached hereto, at an hourly rate of $**16.00** per hour "**the Offer**". It was significantly more than the $ **12.65** hourly wage rate paid to the plaintiff by the defendant at that time. **On or about July 15, 1997**, the plaintiff informed his supervisors at defendant hospital, that he had received an employment offer from the **Laurel Regional Hospital** for a position at $**16.00** per hour. He was told that they would match the $ **16.00** per hour rate.

6. **On July 25, 1997**, defendant, by its duly authorized employees, made a written **offer** to plaintiff, "**Exhibit B**" one page attached hereto. **On July 27, 1997**, defendant, by its authorized employees, made a written **upgraded job description** "**Exhibit C**" on three pages attached hereto. That established a **protective class** in the position of an echocardiography technologist. The offer stated in pertinent part that, **plaintiff's job description had been upgraded**, "**certified and approved**" and that after the paper work was completed that plaintiff would be upgraded, retroactive to **June 13, 1997**, to a grade **10** step **3** at the rate of $**16.00** per hour.

7. The plaintiff, relying upon the defendant's offer, and rejected the offer from the **Laurel Regional Hospital** and remained in the employ of defendant. **On May, 7 1999**, a **Retainer Agreement** "**Exhibit D**" on one page attached hereto. The plaintiff and an attorney construed under the law of the District of Columbia was executed in duplication and each of which shall constitute an original in relation to the defendant agreement to pay $**16.00/hr**., and a claim of discrimination and / or denial of employment *promotional* opportunity in **1998**, upon the death of the senior echocardiography technologist position.

8. Defendant's failure refusal and neglect to raise plaintiff's pay rate constituted a **Breach of contract** by defendant "**Exhibit E**" on three pages attached hereto. As a result of defendant's breach of contract, plaintiff has suffered financial losses, the amount of which continued to increase with each pay period.

9. During the month of **"May 1998"**, the defendant infringed the **Collective Bargaining Agreement** when defendant hired a temporary full-time employee, echocardiography technologist and paid her almost $ **5,000.00** dollars more than the plaintiff's annually income. The plaintiff orientated the temporary employee for **90 days** to the facilities of the defendant prior to the mandatory active duty training military obligation on, **September 10, 1998**. The plaintiff had to attend **mandatory military training on September 10, 1998 "Exhibit F"** on two pages attached hereto. After, the military obligation the plaintiff returned to defendant's hospital on, **December 22, 1998**. Plaintiff was notified upon returning from his military obligation by the, Director of the Echocardiography Laboratory, Doctor Bernice Brown, that the senior technologist have died just after midnight.

10. However, this making the plaintiff the first in line for **seniority** according to the defendant's **Collective Bargaining Agreement and AFSCME, Local 2094, Article X, seniority definitions "Exhibit G"** one page attached hereto. This, established **protected class**.

11. During the month of **December 1998**, words was spoken to hire the defendant's temporary employee to full-time employment. The defendant alleged that it was urgent to hire a full-time employee under the circumstances of the death of the defendant's most senior echocardiography technologist departing. However, the plaintiff did not settle with the defendant's method of hiring a full-time employee without filing a job vacancy with the defendant's office of human resources or the **AFSCME, Local 2094**, *because it would not have been fair to full-time in house Employees, to receive an equal opportunity to bid for a promotion, as in the plaintiff's case*. **Although there was a need to hire However, defendant waited almost 9 months to hire a full-time employee indicating that there was no urgent need to hire.** Please see **"Exhibit's J, K,"** for the true date of hire.

12. Knowing the habits of the defendant, the plaintiff filed an official grievance form. **On February 9, 1999** an **AFSCME Official Grievance Form "Exhibit H"** one page attached hereto. Potential violations of the defendants **Collective Bargaining Agreement** with the, **AFSCME, Local 2094** was noted. Statement of grievance listed applicable violations: **Article X, Section 6. A, B, C, D, and Section 7., Promotions "Exhibit I"** one page attached hereto. This established a **protected class**.

13. **On August 26, 1999**, Ms. Williams, Colleen P. was hired as a full-time employee, please see, **Personnel Recommendation Form "Exhibit J"** one page attached hereto. *A valid breach of contract was filed approximately 3months prior to the hiring of Ms. Williams, Colleen P., and an official grievance was filed approximately 6 months prior to the hiring of Ms. Williams, Colleen P.* The defendant's credibility for non-discriminator actions is not credible.

14. **On August 26, 1999, Personnel Recommendation Form** was accompanied with a justification sheet. The **Justification Sheet "Exhibit K"** one page attached hereto. The plaintiff's finds the justification sheet to be a fraudulent document used as a ***pretext to disguise discriminatory practice*** and claims that the defendant intentions is to **Intentionally Discriminate**. *The plaintiff have made many attempts to establish a protective class and the defendant continued to look outside of the plaintiff's protective class.* The plaintiff's ***promotion*** according to the **Collective Bargaining Agreement** between the defendant hospital and **AFSCME, Local 2490,** have been over looked by the defendant *intentionally* as evident from the above **"Exhibits A, B, C, D, E, F, G, H, I, J, and K"** As a result the plaintiff has suffered mentally, physically, financial losses, the amount of which continues to increase with each pay period.

15. The defendant's actions was made in bad faith and/or reckless disregard of whether the plaintiff's promotion would have been honored.

16. It was made solely for the purpose of **intentional discriminating (sex)**, and **retaliation** towards the plaintiff.

17. As a result the plaintiff has suffered mentally, physical, financial losses, the amount of which continues to increase with each pay period.

## COUNT 2
## RETALIATION

18. Plaintiff's belief is that the defendant *intentionally* over looked the opportunity to *promotion*, because of the plaintiff's filing of a grievance and lawsuit. Plaintiff repeats **paragraphs 7, 8, 9, 10, 11, 12, 13, 14** of this complaint as if repeated and re-alleged herein.

19. The **August 26, 1999, Personnel Recommendation Form** and **Justification Sheet** offering a temporary employee a full-time employment was made *intentionally to discriminate* (sex), and *retaliation* in bad faith and/or in reckless disregard of whether the plaintiff's *promotion* would have been actually honored.

20. It was made solely for the purpose of *intentional discriminating* (sex), and *retaliation* towards the plaintiff.

21. As a result the plaintiff has suffered mentally, physically, financial losses, the amount of which continues to increase with each pay period.

## COUNT 3
## FRAUD

22. Plaintiff repeats **paragraph 14 "Exhibit K"** attached hereto. The defendant *nondiscriminatory reason* for the employment action was usage of the **Justification Sheet, "Exhibit K"**. "The defendant stated justification for its action was based on the **approved school for Cardiac Sonography**, demonstration of exemplary skills during her tenure, the attendance and/or absence of the male echocardiography, **the current status that the male echocardiographer was on military leave for three months**, and the now deceased senior technologist, Ms. Spencer is no longer on staff, **the urgent need to replace the position of the deceased late Ms. Spencer**, that services will suffer with only one tech., especially if the male tech has to be away for his illness, vacation, military leave, etc., and **because of recruiting qualified applicants has been hard due to a very tight market and the limited number of echocardiography technologist**. *The underlined statements are not its true reason but was merely a pretext to disguise discriminatory practice.*"

23. The **August 26, 1999, offer** to hire for full-time employment was *fraudulent and intentional* in that it was made in bad faith and/or in reckless disregard of whether the *plaintiff's promotion* would have been actually honored.

24. It was made solely for the purpose of *intentional discriminating* (sex), a *retaliation* of the plaintiff.

25. As a result the plaintiff has suffered mentally, physically, financial losses, the amount of which continues to increase with each pay period.

## COUNT 4
## BREACH OF CONTRACT
## BETWEEN AFSCME

26. Plaintiff repeats **paragraphs 9-14, 15-25** of this complaint as if repeated and re-alleged herein.

27. Defendant over looked the: **definition of seniority** prior to **February 9, 1999, official grievance form, filing vacancies, promotions, hiring process,** *intentionally*, in that it was made in bad faith and/or in Reckless disregard of whether the plaintiff's *promotion* would have been actually honored.

28. It was made solely for the purpose of *intentional discriminating* (sex), and *retaliation* of the plaintiff.

5

29. As a result the plaintiff has suffered mentally, physically, financial losses, the amount of which continues to increase with each pay period.

## COUNT 5
## EQUITABLE RELIFE

30. Plaintiff repeats **paragraphs 1- 29** as if repeated and re-alleged herein.

31. Since the death of the most senior technologist and/or prior to **August 26, 1999**, *the plaintiff have not been granted an opportunity to bid for promotion*. However, this would have been an ordinary *promotion* with pay increases resulting from time employed and satisfactory job performance and had nothing to due with the hiring **August 26, 1999 or earlier**.

32. Had plaintiff's *promotion* been granted to approximately **$ 5,000.00** dollars more than what the defendant was paying the new employee annually, retroactive to **August 26, 1999 or sooner**, the plaintiff would, in addition, have gotten time and performance raises.

33. Plaintiff has no adequate remedy at law.

**WHEREFORE**, the plaintiff prays that this court grant him the following:

1. **Judgment, on count 1,** in an amount equal to the **Title VII of the Civil Rights Act of 1964 (Title VII), The Civil Rights Act of 1991, The Equal Pay Act of 1963 (EPA)**, all of the additional wages and benefits that this court finds he would have been paid or accrued had his *promotion* been granted to exceed the new employee's salary as of **August 26, 1999 or sooner**.

2. **Judgment, on count 2,** in an amount equal to the **Title VII of the Civil Rights Act of 1964 (Title VII), The Civil Rights Act of 1991, The Equal Pay Act of 1963 (EPA)**, all of the additional wages and benefits that this court finds he would have been paid or accrued had his *promotion* been granted exceeding the new employee salary as of **August 26, 1999 or sooner**.

3. **Judgment, on count 3,** in an amount equal to the **Title VII of the Civil Rights Act of 1964 (Title VII), The Civil Rights Act of 1991, The Equal Pay Act of 1963 (EPA)**, all of the additional wages and benefits that this court finds he would have been paid or accrued had his *promotion* been granted to exceed the new employee's salary as of **August 26, 1999 or sooner**.

4. **Judgment, on count 4,** in an amount equal to the **Title VII of the Civil Rights Act of 1964 (Title VII), The Civil Rights Act of 1991, The Equal Pay Act of 1963 (EPA),** all of the additional wages and benefits that this court finds he would have been paid or accrued had his *promotion* been granted to exceed the new employee's salary as of **August 26, 1999 or sooner**.

5. An order directing and requiring defendant to retroactively pay his promotional hourly pay rate and benefits to that which it would have been as of the date of judgment had his *promotion* been granted and raised to as of **August 26, 1999 or sooner**.

6. Plaintiff's court cost, expense and attorney fees.

7. Pain and suffering from work related stresses and disorders.

8. Such other and further relief as this court deems just.

*[signature]*

**Plaintiff, Rossi M. Potts
14124 Bishop Claggett Ct.
Upper Marlboro Maryland, 20772**