**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| ROSSI POTTS | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1856 (RMU) |
| | : | | |
| v. | : | Re Document No.: | 91 |
| | : | | |
| HOWARD UNIVERSITY HOSPITAL, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

### GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

This matter comes before the court on the defendant's motion for summary judgment. The plaintiff, a male, brings this action against his former employer, Howard University Hospital (the "Hospital" or the "defendant"), asserting claims of disparate treatment based on his gender and retaliation, in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. code § 2-1402.11 and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq*., and wrongful termination under the laws of the District of Columbia. For the reasons discussed below, the court grants the defendant's motion for summary judgment.

## II. BACKGROUND

### A. Factual History

The plaintiff was employed by the Hospital from 1994 to 2002 as an echocardiograph technologist ("ET") in the echocardiography ("echo") lab. 4th Am. Compl. ¶ 4. During his tenure, the plaintiff was supervised directly by Bernice Jackson, M.D., the director of the echo

lab.  Def.'s Statement of Undisputed Facts ("Def.'s Statement") ¶ 3.  Jackson's supervisor was

the chief of the cardiology division, Deborah Williams, M.D.  *Id.* ¶¶ 4-5.  Williams, in turn,

reported to Randall McKennie, the Administrative Director of the Department of Medicine.  *Id.*

Upon joining the Hospital, the plaintiff worked with Jane Spencer, an ET whose salary

exceeded his own.  *Id.* ¶ 6.  Both Spencer and the plaintiff were, however, "at the same level,"

because there was no hierarchy among the ETs.  Pl.'s Dep. 67:14-21; Def.'s Statement ¶¶ 5, 6.

Instead, the Hospital's Director of Human Resources, Anthony Jacks ("Jacks") attributes the

salary discrepancy between Spencer and the plaintiff to Spencer's approximately thirty years of

service at Howard University.  Def.'s Mot., Ex. A. ("Jacks Aff.") ¶ 9.

The plaintiff and Spencer worked together until May 1998, when Spencer took leave due

to illness.  Def.'s Statement ¶ 9.  During Spencer's absence, the plaintiff "helped [to] train and

orientate" the Hospital's temporary replacement ET, Colleen Williams.  4th Am. Compl. ¶¶ 12-

13.  Spencer ultimately passed away and the plaintiff "made it known to the defendant that he

was interested and wanted to be considered for [Spencer's] vacancy."  4th Am. Compl. ¶ 18; *see*

*generally* Pl.'s Dep.  The plaintiff believed that Spencer's death had created a vacancy for a

higher-paid position and understood that "higher pay [would] constitute a promotion."  Pl.'s Dep.

181:20-21.  The Hospital, however, did not advertise any such vacancy and, instead, hired

Williams permanently on August 26, 1999.  Def.'s Statement ¶ 10; Pl.'s Opp'n at 2.

The plaintiff acknowledged that during his employment he received numerous complaints

regarding his performance.  Pl.'s Opp'n at 2.  In a written reprimand issued in 2000, the Hospital

advised the plaintiff that he had been "late forty-six time[s] between December, 1999 through

June, 2000."  Def.'s Mot., Ex. F.; *see also id.*, Ex. D (noting in a 1996 performance evaluation

that the plaintiff "continue[d] to have multiple late arrivals"); Ex. E (stating in his 1998

performance evaluation that the plaintiff had received "a letter of formal counseling on his time and attendance").  In addition to these tardiness and attendance issues, the plaintiff's co-workers and supervisors complained that, on multiple occasions, he had refused to perform echocardiograms despite a physician's orders to do so.  Def.'s Statement ¶ 19; *see also* Def.'s Mot. Exs. J-M.  Based on such acts of insubordination, which "needlessly delayed the delivery of care to the patient," McKennie recommended in July 2001 that the Hospital fire the plaintiff. Def.'s Mot., Ex. M.  Termination was proposed for a second time sometime prior to March 26, 2002, "based on [the plaintiff's] failure to identify himself to patients as a technician, misrepresentation of himself as a doctor and performance of inappropriate unrequested abdominal ultrasound examinations of female."  *Id.*, Ex. G.

On March 26, 2002, Williams recommended the plaintiff's termination yet again after he allegedly, "without medical authorization, placed a patient on a monitoring device and then left the room, failing to monitor the patient."  Def.'s Statement ¶ 23; *see also* Def.'s Mot., Ex. G.  On April 19, 2002, the Hospital terminated the plaintiff, indicating in a letter that he was being terminated for this incident described by Williams and because he "continued to conduct [him]self outside of the boundaries of [his] job description."  Def.'s Mot., Ex. N.  The plaintiff contends that the Hospital never "investigated" the incident or discussed the allegations with him.  4th Am. Compl. ¶ 24; Pl.'s Opp'n at 4.  After his termination, the plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), claiming that the Hospital had retaliated against him for his previously filed gender discrimination complaint.  4th Am. Compl. ¶ 2.

**B. Procedural History**

On September 25, 1999, the plaintiff filed a complaint with the District of Columbia's Office of Human Rights (DCOHR), "claiming gender discrimination based on the defendant's failure to consider him" for Spencer's position, which he maintains would have been a promotion. 4th Am. Compl. ¶ 21. Between October 2004 and September 2005, the plaintiff filed four lawsuits in the district court, alleging gender discrimination, retaliation, retaliatory discharge, wrongful termination, breach of contract, obstruction, fraud, reliance and other violations of federal and state statutes. *See* Mem. Op. (Jan. 4, 2007) at 2. All four cases were consolidated and, on January 4, 2007, the court dismissed the case after determining that the plaintiff had failed to state a claim upon which relief could be granted. *See generally id.* Upon appeal, the Circuit affirmed the dismissal of the plaintiff's claims except for his gender discrimination, retaliation and wrongful termination claims, which were remanded for further reconsideration. *Potts v. Howard Univ. Hospital*, 258 Fed. Appx. 346, 347 (D.C. Cir. 2007).

On September 4, 2008, the plaintiff filed a fourth amended complaint restating his claims for gender discrimination, retaliation and wrongful termination pursuant to Title VII and the DCHRA.[1] *See generally* 4th Am. Compl. The complaint asserts that the defendant (1) discriminated against him "[b]y failing to promote him because of his gender," (2) retaliated against him "by terminating his employment" and (3) wrongfully terminated him "by ending the plaintiff's employment based on illegal discriminatory acts and baseless allegations regarding his

---

[1]  Because the DCHRA was modeled on Title VII, discrimination and retaliation claims brought under the DCHRA are evaluated pursuant to the *McDonnell Douglas* framework and guided by Title VII case law. *Goos v. Nat'l Asso. of Realtors*, 715 F. Supp. 2, 3 (D.D.C. 1989) (citing to *Thompson v. Intn'l Asso. of Machinists*, 614 F. Supp. 1002, 1011 (D.D.C. 1985)); *see also Hamilton v. Howard Univ.*, 960 A.2d 308, 314 (D.C. 2008) (citing *Hollins v. Fed. Nat'l Mortg. Asso.*, 760 A.2d 563, 571 (D.C. 2000)); *Davis v. Gables Residential/H.G. Smithy*, 525 F. Supp. 2d 87, 101 n.3 (citing *Howard Univ. v. Green*, 652 A.2d 41, 44-45 (D.C. 1994)).

work." *Id.* at 5.  The defendant has filed a motion for summary judgment.[2]  *See generally* Def.'s

Mot.  With this motion now ripe for adjudication, the court turns to the applicable legal

standards and the parties' arguments.


## III.  ANALYSIS

### A.  Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322

(1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are

"material," a court must look to the substantive law on which each claim rests.  *Anderson v.*

---

[2]    In his opposition to the defendant's motion for summary judgment, the plaintiff resurrects arguments that he had put forth previously in his motions to strike two of the affidavits relied upon by the defendant: Randall McKennie and Anthony Jacks.  *See* Pl.'s Mot. to Strike McKennie Aff.; Pl.'s Mot. to Strike Jacks Aff.  The court struck the motions because the plaintiff had failed to follow the procedures set forth in the court's standing order issued on December 23, 2004.  Minute Order (Jan. 14, 2010). The plaintiff has made no subsequent effort to refile these motions in accordance with the procedures set forth in the standing order.

Although the importance of complying with the court's standing order goes without saying, the court remains unconvinced by the plaintiff's arguments that the affidavits should be stricken from the record.  The plaintiff contests that the affidavits should be struck because they were not provided during discovery.  *See* Pl.'s Mot. to Strike McKennie Aff.; Pl.'s Mot. to Strike Jacks Aff.  Under Federal Rule of Civil Procedure 26(b)(3)(A), affidavits by non-expert witnesses that are prepared in anticipation of litigation would not ordinarily be discoverable unless the party seeking the document can show that "it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means."  FED. R. CIV. PROC. 26(b)(3)(A).  The record supports the fact that the plaintiff had an opportunity to depose both McKennie and the previous Director of Human Resources, Renee Inman, whom Jacks replaced after discovery had already closed.  Def.'s Opp'n to Pl.'s Mot. to Strike McKennie and Jacks Affs. at 2.  Jacks' affidavit was limited to information gleaned from the plaintiff's personnel records, information to which Inman, as the former Director of Human Resources, had also been privy.  The plaintiff fails, therefore, to show that he could not "without undue hardship," have obtained the substantial equivalent of the information provided in the Jacks and McKennie affidavits.

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

## B. The Plaintiff's Sex Discrimination Claim

### 1. Legal Standard for Gender Discrimination

Generally, to prevail on a claim of gender discrimination under Title VII, a plaintiff must follow a three-part burden-shifting analysis known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

Ordinarily, to establish a prima facie case of sex discrimination, a female plaintiff must show that (1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination. *Czekalski v. Peters*, 475 F.3d 360, 364 (D.C. Cir. 2007) (citing *George v. Leavitt*, 407 F.3d 405, 412 (D.C. Cir. 2005)). But when the plaintiff is a male, he "is a member of a historically favored group," and hence does not belong to a protected class. *Bell v. Runyon*, 1997 WL 540814, at *2 (D.D.C. July 17, 1997); *see also Bryant v. Leavitt*, 475 F. Supp. 2d 15, 25-26 (D.D.C. 2007); *cf. Maestro v. Potomac Elec. Power Co.*, 447 F.3d 843, 851 (D.C. Cir. 2006) (explaining that in a reverse racial discrimination case "'there is nothing inherently suspicious' about an employer's decision to promote a minority applicant instead of a white applicant, or to fire a white employee"

(quoting *Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993)).  Instead, a male plaintiff establishes a prima facie case by presenting evidence of background circumstances that support an inference of discrimination.[3]  *Bryant*, 475 F. Supp. 2d at 25 (citing *Harding*, 9 F.3d at 153).  Two general categories of evidence constitute "background circumstances": (1) evidence indicating that an employer has some reason or inclination to discriminate against males, and (2) "evidence indicating that 'there is something fishy about the facts of the case at hand that raises an inference of discrimination.'"  *Maestro*, 447 F.3d at 851 (quoting *Harding*, 9 F.3d at 153).[4]

If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee.  *Burdine*, 450 U.S. at 254.  To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action.  *Id.*  Here, however, the Hospital contends that the plaintiff did not establish a prima facie case and does not offer a legitimate, non-discriminatory reason for its actions.  *See* Def.'s Mot. at 7.  Accordingly, the court will analyze whether the plaintiff has demonstrated a prima facie case.

---

[3]     "Such a showing replaces a minority plaintiff's showing of protected status."  *Bell v. Runyon*, 1997 WL 540814, at *2 (D.D.C. July 17, 1997); *see also Harding v. Gray*, 9 F.3d 150, 153 (D.C. Cir. 1993).

[4]     "[T]he burden for demonstrating 'background circumstances' . . . is minimal. . . [and] is not intended to be an 'additional hurdle' for [male] plaintiffs."  *Maestro*, 447 F.3d at 851 (describing the white plaintiff's burden to prove a prima facie case in a reverse discrimination case (quoting *Harding*, 9 F.3d at 154 ).  Indeed, the plaintiff's burden of establishing a prima facie case of discrimination under the *McDonnell Douglas* framework is "not onerous."  *Burdine*, 450 U.S. at 253.

### 2. The Court Grants Summary Judgment to the Defendant on the Plaintiff's Gender Discrimination Claims

The defendant asserts that the plaintiff has failed to establish a prima facie case of gender discrimination based on his non-promotion.[5]  Def.'s Mot. at 7.  It argues that "the [Hospital] did not fail to promote [the plaintiff] to the position of 'senior echo tech,' as he alleges[,] because that position simply did not and does not exist."  *Id.* at 2.  In other words, the defendant states that "the death of Spencer did not create an opportunity for a promotion" and instead "merely created a vacancy for another [ET] to be hired at the then-current market rate."  *Id.* at 7.

The plaintiff relying solely on his own deposition testimony, insists that Spencer's death resulted in an unadvertised vacancy for a higher paying senior position.  Pl.'s Opp'n at 4 (citing to Pl.'s Dep. at 66, 68, 201, 173, 178-185).  The plaintiff claims, relying again only on his own deposition testimony, that "two females who were the decision makers in the hiring process discriminated against him because he was male."  *Id.* at 7 (citing Pl.'s Decl. at 90-97).

To survive the defendant's motion for summary judgment, the plaintiff must provide evidence that the "senior" ET position which he claims to have been denied in fact existed.  *Int'l Bhd. Of Teamsters v. United States*, 431 U.S. 324, 358 (1977) (explaining that "[a]lthough the *McDonnell Douglas* formula does not require direct proof of discrimination, it does demand that the alleged discriminatee demonstrate at least that his rejection did not result from . . . the absence of a vacancy in the job sought"); *Carter v. George Wash. Univ.*, 387 F.3d 872, 878

---

[5]     In refuting the gender discrimination claim, the defendant also puts forth "numerous nondiscriminatory reasons" for the plaintiff's termination.  Def.'s Mot. at 8.  The plaintiff responds to the non-discriminatory reasons for his termination, claiming the reasons were pretextual.  Pl.'s Opp'n at 7.  The court need not consider the parties' arguments because the plaintiff did not allege in its complaint that his termination was an act of gender discrimination, instead confining his gender discrimination claim to his non-promotion.  *See generally* 4th Am. Compl.  The court notes, however, that the defendant's legitimate, non-discriminatory reason for terminating the plaintiff, *i.e.* poor performance, was not successfully refuted by the plaintiff.  *See infra* Part III.C.2.

(D.C. Cir. 2004) (stating that "[u]nder *McDonnell Douglas*, in order to establish a prima facie case for a discrimination claim, the plaintiff must show that . . . [he] 'was qualified for a job *for which the employer was seeking applicants*'" (emphasis added) (quoting *McDonnell Douglas*, 411 U.S. at 802)). The plaintiff's only evidence for the existence of a senior ET position is Spencer's "higher-pay." Pl.'s Dep. 181:20-21. The plaintiff does not, however, offer anything to refute the defendant's claim that Spencer received more money due to her longevity as a Howard University employee. *See generally* Pl.'s Opp'n. Because no reasonable juror could find based on the plaintiff's evidence that a vacancy existed, the court grants summary judgment to the defendant on the plaintiff's gender discrimination claims. *See Anderson*, 477 U.S. at 252 (requiring that a nonmoving party establish more than "the mere existence of a scintilla of evidence" to defeat summary judgment).

### C. The Plaintiff's Retaliation Claim

#### 1. Legal Standard for Retaliation

When the defendant contesting a retaliation claim brought under Title VII presents a legitimate, non-discriminatory reason for its actions, the district court must resolve only one question to resolve a motion for summary judgment: "whether the employee's evidence creates a material dispute on the ultimate issue of retaliation 'either directly by showing that a [retaliatory] reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Jones v. Bernake*, 557 F.3d 670, 678 (D.C. Cir. 2009) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983). The court must determine if the plaintiff showed "*both* that the reason was false, *and* that . . . [retaliation] was the real reason." *Weber v. Battista*, 494 F.3d 179, 186 (D.C. Cir. 2007)

(alterations in original and internal quotations omitted) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

The court must consider whether the jury could infer retaliation from (1) the plaintiff's prima facie case,[6] (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Id.* (citing *Waterhouse v. District of Columbia*, 298 F.3d 989, 996 (D.C. Cir. 2002); *see also Smith v. District of Columbia*, 430 F.3d 450, 455 (D.C. Cir. 2005) (quoting *Murray v. Gilmore*, 406 F.3d 708, 713 (D.C. Cir. 2005)). The plaintiff need not present evidence in each of these categories to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances. *Id.* at 1291.

## 2. The Court Grants Summary Judgment to the Defendant on the Plaintiff's Retaliation Claim

The defendant states that the "[p]laintiff was terminated because he had repeatedly taken actions outside the boundaries of his job description and specifically, in April of 2002, had, without medical authorization or direction, placed a patient on a cardiac monitoring device and then failed to monitor the patient." Def.'s Mot. at 10. The defendant contends that the decision-makers who terminated the plaintiff had no knowledge of the plaintiff's previous DCOHR and EEOC complaints, and, accordingly, the plaintiff's termination was not in retaliation for the plaintiff's protected activity. *Id.* Lastly, the defendant argues that "there is no temporal

---

[6] To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006); *Jones*, 557 F.3d at 677.

relationship between [the plaintiff's] complaint and his termination" since his complaints with the DCOHR and the EEOC[7] were filed in 1999 and he was not terminated until April 19, 2002. *Id.*

The plaintiff responds by alleging that the defendant was aware at the time of his termination that the DCOHR complaint process had commenced and that an investigation was pending. Pl.'s Opp'n at 5. Asserting no other arguments, the plaintiff concludes that "the reasons given for terminating his employment are pretextual." *Id.*

The defendant asserts that the plaintiff was discharged for his poor performance, *see* Def.'s Mot. at 10, and thereby advances a legitimate, non-discriminatory justification for the plaintiff's termination. *Leavitt*, 407 F.3d at 412 (indicating that "performance below the employer's legitimate expectations" is one of the two most common legitimate reasons for discharge). To document the plaintiff's poor performance, the defendant provides the court with complaints regarding the plaintiff's tardiness and attendance, insubordination, misrepresentation as a doctor and unauthorized treatment of patients. Def.'s Mot., Exs. D-G, J-M. Indeed, the plaintiff's termination letter explains that he was terminated because he "continued to conduct [him]self outside of the boundaries of [his] job description." *Id.*, Ex. N.

Notwithstanding the defendant's legitimate, non-discriminatory reason for termination, the court considers the evidence offered by the plaintiff in support of his prima facie case in order to evaluate the prima facie as part of the evidence from which retaliation may be inferred. *Leavitt*, 407 F.3d at 413 (explaining that the prima facie case is discussed in a retaliation claim analysis "not to 'evade[] the ultimate question of discrimination vel non' but rather because [the plaintiff's] prima facie case is part of the evidence that the court must consider in addressing that

---

[7]    In addressing his retaliation claim, the plaintiff refers only to his DCOHR complaint filed on September 25, 1999. 4th Am. Compl. ¶ 21.

question" (quoting *Aikens*, 460 U.S. at 714)).  Although it is clear that the plaintiff engaged in statutorily protected activity when he filed a complaint with the DCOHR in 1999, *Richardson v. Gutierrez*, 477 F. Supp. 2d 22, 27 (D.D.C. 2007) (stating that "[i]t is well settled that Title VII protects informal, as well as formal, complaints of discrimination"), and that he suffered a materially adverse action when he was terminated, *see Tsehave v. Williams C. Smith & Co.*, 402 F. Supp. 2d 185, 197 (D.D.C. 2005) (concluding that a discharged plaintiff satisfied the adverse action necessary in a prima facie case for retaliation), the plaintiff has failed to raise a genuine issue of fact concerning a causal connection between the protected activity and the adverse employment action.

The plaintiff's sole argument for the existence of such a causal connection rests of his allegation that the defendant knew that he had filed a complaint with the DCOHR.  Pl.'s Opp'n at 5.  While a plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity," *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (internal quotation omitted), the plaintiff provides no evidence that any Hospital officials knew of his protected activity, *see generally* Pl.'s Opp'n; Compl.  Moreover, the plaintiff's termination occurred over two and a half years after he filed a complaint with the DCOHR, negating any inference of a causal connection based on temporal proximity between the protected activity and the adverse action.  *See e.g.*, *Manuel v. Potter*, 685 F. Supp. 2d 46, 69 (D.C. Cir. 2010) (determining that "nearly two years" was insufficient to find a causal nexus and explaining that the temporal proximity that must exist between protected activity and the adverse action must be "very close" (quoting *Taylor v. Solis*, 571 F.3d 1313, 1322 (D.C. Cir. 2009))).  Accordingly, the plaintiff's evidence regarding his prima facie case does not raise an inference of discrimination.

Furthermore, the plaintiff has offered no evidence of pretext to refute the defendant's legitimate, non-discriminatory justification for his termination. *See generally* Pl.'s Opp'n. In short, because the plaintiff's self-serving allegations are insufficient to find retaliation, *see Potter*, 685 F. Supp. 2d at 70 (declining to find retaliation where "the plaintiff offer[ed] no evidence outside of his own bald assertion that his supervisors possessed any retaliatory animus toward him"), and because he does not provide any additional evidence from which a reasonable fact-finder could infer retaliation, the court grants summary judgment to the defendant on the plaintiff's retaliation claims.

### D. The Court Grants Summary Judgment to the Defendant on the Plaintiff's Wrongful Termination Claim

The defendant argues that the plaintiff did not allege "any facts that would support a cause of action for wrongful discharge." Def.'s Mot. at 12. More specifically, the defendant argues that the plaintiff has failed to show that the sole reason for his discharge was his refusal to violate a statute or municipal regulation. *Id.*; Def.'s Reply at 11. The plaintiff asserts that "the defendant did not have good cause for termination," and instead terminated him based on "illegal discriminatory acts and baseless allegations regarding his work." 4th Am. Compl. ¶ 41.

Under the laws of the District of Columbia, "an employer may discharge an at-will employee at any time and for any reason, or for no reason at all." *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 30 (D.C. 1991); *see also Liberatore v. Melville Corp.*, 168 F.3d 1326, 1329 (D.C. Cir. 1999). A "very narrow" public policy exception exists, however, to the at-will employment doctrine for those plaintiffs who can show by a preponderance of the evidence that the "sole reason for the discharge [was] the employee's refusal to violate the law." *Adams*, 597 A.2d at 34. "Such an action must be firmly anchored in either the Constitution or in a statute or

regulation which clearly reflects the particular 'public policy' being relied upon." *Warren v. Coastal Int'l Secs., Inc.*, 96 Fed. Appx. 722, 722-23 (D.C. Cir. 2004).

The plaintiff does not allege that the Hospital terminated him for his refusal to violate a law during his employment. *See generally*, 4th Am. Compl. Instead, the plaintiff argues that, because his termination was a result of discrimination, the defendant's actions in terminating him violated anti-discrimination policies as set forth in the DCHRA and Title VII. Pl.'s Opp'n at 7. As discussed above, however, the plaintiff failed to demonstrate that the defendant violated the anti-discrimination policies set forth in either of these statutes. *See supra* Part III.B-C. Thus, the court grants summary judgment to the defendant as to the plaintiff's wrongful termination claim. *Davis v. Gables Residential/H.G. Smith*, 525 F. Supp. 2d 81, 101 (D.D.C. 2007) (declining to recognize the plaintiff's wrongful discharge claim insofar as it was based on arguments that his termination violated Title VII or the DCHRA because the court had already granted summary judgment to the defendant on the plaintiff's discrimination and retaliation claims).

## IV. CONCLUSION

For the foregoing reasons, the court grants the defendant's motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 8th day of September, 2010.

RICARDO M. URBINA
United States District Judge